IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CHELSEA CONDOMINIUM UNIT OWNERS ASSOCIATION, et al.<br><br>        Plaintiffs,<br><br>        v.<br><br>1815 A ST, CONDOMINIUM GROUP, LLC, et al.,<br><br>        Defendants. | Civil Action No. 1:06-CV-00187-RMU |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MOTION TO DISMISS**

Plaintiffs, The Chelsea Condominium Unit Owners Association ("Owners Association"), and Nicole DeGraffenreed, Shikha Bhatnagar and Joellynn Schulz (collectively, "Unit Owner Plaintiffs"), respectfully submit this memorandum of points and authorities in opposition to the motion to dismiss filed by defendants 1815 A St, Condominium Group, LLC ("Condominium Group"), National Title Services, Ltd. ("National Title"), and Herbert A. Callihan ("Callihan").

**I.
INTRODUCTION**

This case arises out defendants' scheme to use intentional deceit in the marketing and sale of condominium units in a building that defendants failed to properly design and construct.

The developer of the condominium was defendant Condominium Group, which is owned and managed by defendants Callihan and John F. Casey.[1]

Defendants obtained a "registration" of the condominium from the District of Columbia government through the use of a forged document: what appeared to be a letter from Bank of America, signed by "Walter P. Stolze, Branch Manager," in which Bank of America purportedly expressed its willingness to post a letter of credit to insure that potential warranty claims brought by unit owners would be satisfied. On the basis of that forgery, the District government granted defendants "registration" of the condominium. *See* Complaint, ¶¶ 7-15.

After obtaining that "registration" through the use of the forged Bank of America letter, defendants proceeded to market the condominium through the use of a Public Offering Statement (the "POS"). As detailed in the Complaint, the POS contained numerous misleading representations and omissions, including false representations concerning the building's compliance with housing and building codes, defendants' intention to complete renovations by a certain date, the budget for those renovations, and defendants' estimate of the amount of condominium fees and assessment that unit owners would be required to pay. *See* Complaint, ¶¶ 18-22. The POS also *failed* to disclose various clearly material facts that – had they been disclosed – likely would have ruined defendants' chances of selling the condominium units. As alleged in the Complaint, defendants failed to disclose that they had obtained "registration" of the condominium by submitting a forged documents to the District government, that they had failed to comply with the requirement of D.C. law that condominium developers post a

---

[1] Mr. Casey had not been served with the summons and complaint as of the filing of the motion to dismiss. Presumably, this is why he did not join in that motion. Mr. Casey has now been served, although his time to answer the complaint has not yet run.

warranty bond, that they had not received permits for the work they did or were in the process of doing at the building, that they had not applied for or received a certificate of occupancy for the building, and that the condominium structure suffered from violations of the housing codes, building codes and/or fire safety codes.  *See* Complaint, ¶¶ 24-29.

As a result of those misleading representation and omissions, defendants sold 12 of the 15 units at the condominium, and those sales went to closing between February 2, 2005 and April 29, 2005.  As an additional aspect of their scheme to profit from the "registration" that they had obtained through use of the forged Bank of America letter, defendants instructed the purchasers that these closings would all be handled by defendant National Title.  But defendants failed to disclose another material fact:  that National Title was actually owned by defendant Callihan, one of the owners of defendant Condominium Group.  The failure to disclose this affiliated business arrangement, and the channeling of the unit purchasers to a particular title company that profited from the sale of title insurance to the unit purchasers, were not only further fraud by defendants, but also were violations of the federal Real Estate Settlement Procedures Act ("RESPA").  *See* Complaint, ¶¶ 34, 54-67.

As the complaint alleges, defendants not only engaged in this pattern of unlawful and fraudulent activity, but also failed to correctly design and construct the condominium.  *See* Complaint, ¶¶ 30-33.  The text of the Complaint does not specify all of the details of the design and construction defects (and defendants have not, in their motion to dismiss, challenged the substance of the claims arising out of those defects), but does note that an Architectural & Engineering Report, detailing those defects, was delivered to the defendant on November 30, 2005, and that the defendants have not corrected those defects.  *Id*.  At trial, plaintiffs will

present evidence that the condominium suffers from serious defects, some of which relate to the basic safety and integrity of the building.

In sum, the purchasers of the condominium units were fraudulently induced by defendants into both purchasing the units and using the settlement services of National Title, only to later discover that the building in which they had purchased those units suffered from very serious defects.

>The Complaint alleges the following causes of action:

>>Count One – Breach Of Statutory Warranty;

>>Count Two – Breach Of Implied Warranties;

>>Count Three – Strict Liability;

>>Count Four – Negligence;

>>Count Five – Violation Of RESPA, 12 U.S.C. § 2607;

>>Count Six – Violation Of RESPA, 12 U.S.C. § 2608;

>>Count Seven – Fraud; and

>>Count Eight –Violation of the D.C. Consumer Protection Procedures Act.

In the motion to dismiss, defendants pursue a strategy designed to increase plaintiffs' litigation expense, and to otherwise make resolution of this dispute more difficult. Defendants do *not* move to dismiss Counts One, Two or Four on substantive grounds. Rather, they ask the Court to dismiss those claims for lack of subject matter jurisdiction, while retaining jurisdiction over the RESPA claims (which defendants challenge substantively in only one minor respect). Thus, defendants are asking the Court to force plaintiffs to litigate two separate lawsuits in two separate courts, even though all of the claims alleged in this case arise out a single course of action by defendants. As will be shown below, defendants' jurisdictional challenge is without

merit. This Court has subject matter jurisdiction to consider and resolve *all* of plaintiffs' claims, and the interests of judicial efficiency weigh heavily in favor of doing so.

Defendants also raise substantive challenges to some – but not all – of plaintiffs' claims. With the exception of one minor issue with respect to Count Six, all of defendants' substantive challenges are entirely without merit, and provide no basis for the Court to dismiss any of plaintiffs' claims. Indeed, defendants go so far as to argue that the Court should dismiss plaintiffs' claim under the D.C. Consumer Protection Procedures Act ("CPPA") solely on the basis of a case that was explicitly overruled by a subsequent amendment to the CPPA. That type of argument is typical of the deceptive and careless conduct demonstrated by these defendants since they began the process of developing and selling the condominium units at issue here. The Court should deny the motion to dismiss.

## II.
## ARGUMENT

**A.     The Court Has Subject Matter Jurisdiction Over The Claims Brought Under District Of Columbia Local Law**

Because the Court has federal question jurisdiction over the RESPA claims alleged in Counts Five and Six, the Court also has supplemental jurisdiction over the other counts, which allege claims under the local law of the District of Columbia. The Court's supplemental jurisdiction is governed by 28 U.S.C. § 1367. Under that provision, jurisdiction is determined under a two-step analysis. First, under subsection (a), the Court must determine whether the local law claims are "so related to" the federal law claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). If that test is met, then the Court has subject matter jurisdiction over the local law claims. Second, under subsection (c), the Court, in its discretion, may (but is not required to) decline

jurisdiction if certain specified criteria are met.  28 U.S.C. § 1367(c).  Here, the Court has supplemental jurisdiction over the local law claims pursuant to subsection (a), and has no basis for declining that jurisdiction under subsection (c).

      **1.**      **The Local Law Claims Are Part Of The Same "Case Or Controversy" Under Article III Of The Constitution**

The test for whether various claims constitute the same "case or controversy" under Article III was established in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).  Section 1367, which was enacted in 1990, "gives federal courts supplemental jurisdiction to the limits Article III of the Constitution permits, and in this way ratifies and incorporates the constitutional analysis the Supreme Court made in the *Gibbs* case."  13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3567.3 (2d ed. 1984 & 2005 supp.).  To satisfy the Article III "case or controversy" requirement, "the federal claim must be substantial, and the state and federal claims must 'derive from a common nucleus of operative fact' such that it 'would ordinarily be expected to try them all in one judicial proceeding.'"  *National Organization for Women v. Operation Rescue*, 37 F.3d 646, 651 (D.C. Cir. 1994) (quoting *Gibbs*, 383 U.S. at 725).  "A loose factual connection between the claims has been held enough to satisfy the requirements that they arise from a common nucleus of operative fact and that they be such that a plaintiff ordinarily would be expected to try them all in one judicial proceeding."  13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3567.1 (2d ed. 1984 & 2005 supp.).  Where claims arise out of the same "transaction or series of transactions," then the claims are deemed to arise from "a common nucleus," and the requirement of subsection (a) is satisfied.  *See North Cent. F.S., Inc. v. Brown*, 951 F. Supp. 1383, 1411 (N.D. Iowa 1996).

Defendants' sole argument with respect to Article III is their assertion that plaintiffs' "RESPA claims have nothing to do with the physical condition of the condominium building or alleged misrepresentations that constitute the main case in point." Defs.' Mem at 4. But that is simply a mischaracterization of plaintiffs' complaint.[2] While it is theoretically true that defendants *could* have violated RESPA without also breaching their obligations with respect to the design and construction of the condominium, that does not mean that, *in this case*, the claims do not derive from a common nucleus of operative facts. Here, plaintiffs allege a course of conduct by defendants – all of which took place over a short period of time – that involved obtaining registration of the condominium by means of the forged Bank of America letter, and then using that unlawfully obtained registration to market and sell the defective condominium units by way of fraudulent statements and omissions. Thus, all of plaintiffs' claims arise out of the same transaction or series of transactions, clearly have at least a "loose factual connection" and would ordinarily all be brought in a single judicial proceeding.

Indeed, certain of plaintiffs' local law claims arise, at least in part, out of *precisely* the same facts that form the basis for the RESPA claims. Plaintiffs allege that defendants committed fraud (Count Seven) and violated the CPPA (Count Eight) by, among other things, failing to make the disclosures required by RESPA.

---

[2] In considering a motion to dismiss for lack of subject matter jurisdiction, the Court "must accept the factual allegations in the complaint as true." *Sturm, Ruger & Co., Inc. v. Chao*, 300 F.3d 867, 871 (D.C. Cir. 2002).

Accordingly, under the very broad standard for what constitutes an Article III "case or controversy," and thus what claims fall within subsection (a) of § 1367, all of plaintiffs' local law causes of action are within the Court's supplemental jurisdiction.

### 2. The Court Should Not Decline Jurisdiction Over The Local Law Claims

As defendants essentially concede, if the local law claims fall within subsection (a) of § 1367, then the Court may (but is not required to) decline jurisdiction only if one of the four specific criteria set forth in subsection (c) applies. *See* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3567.3 (2d ed. 1984 & 2005 supp.) ("The circumstances in which a court may exercise discretion to refuse to hear a case within its supplemental jurisdiction are quite strictly defined."). Here, none of those four criteria apply.

The first criteria is whether the local law claims raise "novel or complex issue[s] of State law." 28 U.S.C. § 1367(c)(1). With respect to this criteria, defendants argue that Count Eight, which alleges a claim under the CPPA, "seeks to overturn a decision of the DC Court of Appeals" in *Owens v. Curtis*, 432 A.2d 737 (D.C. 1981), that, according to defendants "holds that the DC Consumer Procedures Act is not applicable to sales of real estate." But, as discussed in more detail below, *Owens* was overruled by statute in 1990, when the CPPA was amended to explicitly include real estate transactions. Thus, the application of the CPPA to the sale of real estate raises no "novel or complex" issue of law.

The second criteria is whether the local law claims "substantially predominate over" the federal law claims. 28 U.S.C. § 1367(c)(2). Defendants' argument on this point is that the local law claims may generate larger damage claims than the RESPA claims. While that may be true, that in itself does not mean that the local law claims "substantially predominate" over

8

the federal claims. Defendants are unable to cite any authority that the "substantial predominance" criteria is triggered merely by comparing the potential monetary damages at issue. Here, plaintiffs' RESPA claims are very substantial federal law claims, and presumably defendants intend to vigorously defend against those claims. The RESPA claims and local law claims will involve overlapping discovery, and many of the same witnesses. Although the number of local law counts (6) is greater than the number of federal law counts (2), this is merely a reflection of the fact that the design and construction defects give rise to a number of different liability theories, and is *not* a reflection of any greater complexity of the local law claims. Accordingly, defendants' contention that the local law claims "substantially predominate" over the federal law claims is nothing more than speculation.

The third criteria is whether "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). That criteria does not apply here. Indeed, significantly, defendants have not even *asked* the Court to dismiss the RESPA claims, except in one minor respect. Thus, this Court will be handling plaintiffs' RESPA claims, regardless of the disposition of the local law claims.

The fourth criteria is whether "exceptional circumstances" or "other compelling reasons" exist for why the Court should decline jurisdiction. 28 U.S.C. § 1367(c)(4). Defendants only argument on this point is that "[t]he determination of these issues is the particular domain of courts of the District of Columbia." Defs.' Mem. at 6. But that is not true. This Court has supplemental jurisdiction over the local law claims, and there is nothing the least bit unusual about a federal district court considering claims brought under State or local law. Indeed, if the parities here were of diverse citizenship, plaintiffs' local law claims would fall within the *original* jurisdiction of this Court. And defendants' argument is circular: if the

9

mere fact that a claim is brought under local law created an "exceptional circumstance" under subsection (c), then the Court would *always* decline jurisdiction of claims otherwise falling within § 1367.

Finally, even if the Court were to find, as a factual matter, that one of the four criteria of subsection (c) is satisfied, that would *not* mean that dismissal of the local law claims is warranted. Rather, it would only mean that the Court's power to exercise its *discretion* to dismiss those claims is triggered. The exercise of discretion under subsection (c) must still be informed by "the values of 'economy, convenience, fairness and comity.'" *Executive Software N. Am,, Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1557 (9th Cir. 1994)(quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). And here, those values weigh heavily in favor of this Court retaining jurisdiction of the local law claims, so that the entire dispute arising out of the registration, marketing, construction and sale of the condominium issues can be litigated and resolved in an efficient manner. To dismiss the local law claims on jurisdictional grounds would mean that the parties would simultaneously be taking discovery, engaging in motions practice, and ultimately conducting a trial, before two different judges in two different courts. That highly-inefficient process may serve defendants' interests in driving up the costs of this litigation (which are borne by the very condominium units purchasers that these defendants' defrauded into purchasing units in a sub-standard building), but it would certainly not serve any "value" worth protecting, and indeed, would be directly contrary to the values of economy, convenience, and fairness. Accordingly, even if any of the criteria of subsection (c) applied here (which they do not), the Court still should retain jurisdiction over plaintiffs' local law claims.

**B.     The Court Should Not Dismiss Count Three, Which States A Claim For Strict Liability**

Defendants argue that "[t]he concept of 'strict liability' has no bearing" here, suggesting that "strict liability" claims are limited to "abnormally dangerous activities," and thus cannot apply in the context of the sale of allegedly defective condominium units.  Defs.' Mem. at 6-7.  The D.C. Court of Appeals, however, has held that "the concept of strict liability in tort" *does* apply to claims – such as those alleged here – that real property was sold in a defective and unreasonably dangerous condition.  *Berman v. Watergate West, Inc.*, 391 A.2d 1351, 1357 (D.C. 1978); *see also Carl v. Children's Hosp.* 702 A.2d 159, 167 (D.C. 1997) (Ferren, J., concurring) (describing *Berman* as adopting a theory of "strict liability in tort").

The *Berman* case dealt with claims that cooperative units were sold with "defective appliances" that caused damage to plaintiff's property.  As this Court recognized in *Towers Tenant Ass'n, Inc. v. Towers Ltd. Partnership*, 563 F. Supp. 566, 574 (D.D.C. 1983), the principles enunciated in *Berman* also apply to the sale of condominium units.  Indeed, *Towers Tenant Ass'n* involved the sale of allegedly defective condominium units at a building that – like the one at issue here – had been converted by the defendants from an apartment building into a condominium.  In that context, the Court held that "the strict liability/implied warranty principles announced in *Berman* apply to the conversion and sale of condominium units where, as here, the builder/vendor/developer has undertaken significant renovation and rehabilitation of the property."  *Id*. at 576.  Accordingly, defendants' argument is directly contrary to established law in this jurisdiction, and provides no basis for dismissal of Count Three.

**C.      Plaintiffs Consent, At This Stage Of The Lawsuit, To Dismissal Without Prejudice Of Count Six, Solely As To Defendant National Title**

Count Six alleges a claim under 12 U.S.C. § 2608. Defendants argue that Count Six should be dismissed as to defendant National Title because National Title was not a "seller" of the condominium units. Plaintiffs do not dispute this, and consent to dismissal of Count Six, solely as to defendant National Title. The dismissal should be without prejudice, however, because discovery may reveal a factual basis for claims of vicarious liability by National Title for the violations of 12 U.S.C. § 2608 (for example, under theories of conspiracy or aiding and abetting). If plaintiffs decide to assert such a theory, they will file an appropriate motion to amend the Complaint, and the Court can address the issue then.

**D.      The Court Should Not Dismiss Count Seven, Which Alleges Fraud With Adequate Particularity**

Defendants argue that Count Seven, which alleges a claim for fraud, should be dismissed for failure to comply with the requirement of Fed. R. Civ. P. 9(b) that "the circumstances constituting fraud . . . shall be stated with particularity." The Court should reject this argument because plaintiffs' Complaint easily satisfies the requirements of that rule, and gives defendants adequate notice of the nature of the fraud claims being alleged against them.

Fed. R. Civ. P. 9(b) requires a complaint alleging fraud to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996) (internal quotes and citations omitted). "The main purpose of Rule 9(b) is to ensure that defendants have notice of the charges against them adequate to prepare a defense." *U.S. ex rel. Barrett v. Columbia/HCA Health Care Corp.*, 251 F. Supp.2d 28, 34 (D.D.C. 2003). "'A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the

defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *Id.* (quoting *United States ex rel. Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999)). "Furthermore, Rule 9(b) is mitigated by Rule 8's short and plain statement language, and the simplicity and flexibility contemplated by the rules must be taken into account when reviewing a complaint for 9(b) particularity." *Id.*

Here, plaintiffs' Complaint makes numerous, very specific allegations that satisfy the pleading requirements of Fed. R. Civ. P. 9(b), and that provide defendants with more than adequate notice of "the particular circumstances for which [they] will have to prepare a defense at trial." *U.S. ex rel. Barrett*, 251 F. Supp.2d at 34. First, the Complaint alleges both false statements and material omissions, and does so with a great deal of specificity. Paragraph 16 alleges that defendants, as part of their marketing and sale of the condominium units, distributed to potential purchasers a Public Offering Statement ("POS"). Paragraphs 17 through 22 then specifically allege the content of a series of representations alleged to have been false. Indeed, Paragraph 17 through 22 include *specific, verbatim quotes* from the POS that plaintiffs allege were misrepresentations; therefore, it is hard to imagine how these allegations could have been any more "specific." Paragraph 24 alleges that "[p]rior to the closings, defendants failed to disclose (in the POS or otherwise) to potential purchasers a number of material facts."[3] Paragraphs 25 through 29 then specifically allege the precise material facts that defendants failed to disclose. In addition, Paragraph 34 alleges that "[p]rior

---

[3] Under District of Columbia law, the tort of fraud may be based upon "willful omission of a material fact." *Howard v. Riggs Nat. Bank*, 432 A.2d 701, 706 (D.C. 1981).

to the closings, defendants did not disclose to the Unit Owner Plaintiffs that National Title Services had an affiliated business arrangement with defendants Callihan, Casey, and Condominium Group, and that those defendants stood to benefit financially from unit owners' use of the services of National Title Services." Again, it is hard to imagine how these allegations could have been any more "specific." And, more to the point, defendants cannot legitimately claim that these allegations fail to provide them with sufficient notice of the nature of the fraud claims against them.

The complaint also alleges what "was retained or given up as a consequence of the fraud." *Firestone*, 76 F.3d at 1211. Paragraph 70 of the Complaint alleges that the members of the Owners Association and the Unit Owner Plaintiffs reasonably relied on the misrepresentations and omissions detailed in the Complaint, and that, as a result, they "agreed to purchase, and subsequently did purchase, individual units at The Chelsea condominium, and agreed to use defendant National Title Services to handle the settlements and provide title insurance."

Defendants also appear to argue that Paragraph 37 fails to satisfy the requirements of Fed. R. Civ. P. 9(b). But that paragraph merely alleges that defendant National Title is the alter ego of defendant Callihan, and, therefore, that Callihan can be held liable for the debts of National Title. That paragraph does not relate to "the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Firestone*, 76 F.3d at 1211. Accordingly, Paragraph 37 is not subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).

Finally, defendants also suggest that the Complaint contains "no reference to how the Association was defrauded or relied on particular fraudulent acts." But, as noted above, the

14

Complaint does specifically allege that the members of the Owners Association were defrauded. And Paragraph 4 of the Complaint alleges that the Owners Association "has the power to institute this lawsuit, both on its own behalf and on behalf of its members." D.C. Code § 42-1903.08(a)(4) specifically provides the Owners Association the power to institute litigation "on behalf of the unit owners' association or 2 or more unit owners on any matter that affects the condominium." Accordingly, the Owners Association has specific statutory authorization to bring the claims alleged in Count Seven.[4]

### E. The Court Should Not Dismiss Count Eight, Which Alleges A Valid Claim Under The D.C. Consumer Protection Procedures Act

Defendants argue that the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq*. (the "CPPA"), "simply does not apply to sale of real property." Defs.' Mem. at 9. In support of that argument, defendants rely solely upon *Owens v. Curtis*, 432 A.2d 737 (D.C. 1981). That case, however, was overruled by statute more than 15 years ago.

Subsequent to the decision in *Owens*, the Council of the District of Columbia passed the District of Columbia Consumer Protection Act Amendments Act of 1990, D.C. Law 8-234, 38 D.C. Reg. 296. As the D.C. Court of Appeals has expressly recognized, that amendment "was adopted in part to expressly include coverage of real estate transactions which we held [in *Owens*] were not covered by the previous version of the law." *Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1197 n.10 (D.C. 1997); *see also DeBerry v. First Government*

---

[4] Even if the Owners Association did not have the authority to bring the claims alleged in Count Seven, the motion to dismiss that Count should be denied, because the Unit Owner Plaintiffs have alleged that they personally were the victims of defendants' fraud. *See* Complaint, ¶¶ 69-71.

*Mortg. and Investors Corp.*, 743 A.2d 699, 702 n.8 (D.C. 1999) ("[t]he amendment was in response to this court's decision in *Owens v. Curtis,* 432 A.2d 737, 739 (D.C.1981), holding that the CPPA did not apply to the sale of real estate").

Thus, at all times relevant to this case, "real estate transactions" have been included explicitly within the scope of the CPPA. *See* D.C. Code § 28-3901(a)(7) ("real estate transactions" included within the definition of "goods and services"). Accordingly, defendants' reliance on *Owens* is misplaced, and their argument for dismissal of Count Eight is without merit.

### III. CONCLUSION

For the reasons stated above, the Court should deny the motion to dismiss filed by defendants Condominium Group, National Title and Callihan, except that Count Six may be dismissed, without prejudice, solely as to defendant National Title.

Respectfully submitted,


\_\_\_\_\_/s/_____
Jonathan K. Tycko
  D.C. Bar No. 445851
Kathleen R. Hartnett
  D.C. Bar No. 483250
TYCKO, ZAVAREEI & SPIVA LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
(202) 973-0900
(202) 973-0950 (fax)
jtycko@tzslaw.com

*For Plaintiffs, The Chelsea Condominium Unit Owners Association, Nicole DeGraffenreed, Shikha Bhatnagar and Joellynn Schulz*