UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CHELSEA CONDOMINIUM UNIT OWNERS ASSOCIATION, NICOLE DeGRAFFENREED, SHIKHA BHATNAGAR, and JOELLYNN SCHULZ : : : : : : Plaintiffs, : : v. : : 1815 A ST., CONDOMINIUM GROUP, LLC, HERBERT A. CALLIHAN, JOHN F. CASEY, and NATIONAL TITLE SERVICES, LTD. : : : : : Defendants. : | Civil Action No.:   06-187 (RMU) Document Nos.:   3, 4, 7 |

*(Caption reformatted)*

THE CHELSEA CONDOMINIUM UNIT                    :
OWNERS ASSOCIATION,                             :
NICOLE DeGRAFFENREED,                           :
SHIKHA BHATNAGAR,                               :
and JOELLYNN SCHULZ                             :
                                                :
            Plaintiffs,                         :   Civil Action No.:   06-187 (RMU)
                                                :
      v.                                        :   Document Nos.:     3, 4, 7
                                                :
1815 A ST., CONDOMINIUM GROUP, LLC ,            :
HERBERT A. CALLIHAN,                            :
JOHN F. CASEY,                                  :
and NATIONAL TITLE SERVICES, LTD.               :
                                                :
            Defendants.                         :

### MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS[1]

### I.    INTRODUCTION

The plaintiffs, the Chelsea Condominium Unit Owners Association ("Owner's Association") and three individual members of the Owner's Association, Nicole DeGraffenreed, Shikha Bhatnagar, and Joellynn Schulz ("Unit Owners") (collectively, "the plaintiffs"), bring suit alleging several state law claims and violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2601 *et seq.*, regarding defendants Callihan, Casey, and Condominium Group's representations while marketing and selling units in a condominium building. They bring suit against the Condominium Group, LLC ("Condominium Group"), its owners and

---

[1]   John Casey joins the other defendants' motion to dismiss by reference. Def. Casey's Mot. to Dismiss (April 18, 2006).

managers, Herbert Callihan and John Casey, and National Title Services, Ltd. ("National Title") (collectively, "the defendants"). The defendants now move to dismiss all of the state law claims and one of the RESPA claims. Because several of the plaintiffs' state law claims do not share a common nucleus of operative facts with the federal claims, the court lacks supplemental jurisdiction over them and grants in part the defendants' motion to dismiss. Because several of the plaintiffs' state law claims do share a common nucleus of operative facts with their federal claims and because judicial economy favors the court's exercise of supplemental jurisdiction over these claims, and because the plaintiffs have pled their fraud claim with particularity, the court denies in part the defendants' motion to dismiss. Finally, because the plaintiffs concede that dismissal of their RESPA claim as to defendant National Title is appropriate, the court grants the defendants' motion to dismiss as to that claim.[2]

## II.    BACKGROUND

### A.    Factual Background

In 2004, defendant Condominium Group purchased the Chelsea at 1815 A Street, S.E in Washington, D.C. for the purpose of converting the building into condominiums for resale. Compl. ¶¶ 6-7. To accomplish this goal, the Condominium Group submitted an application to register the condominium to the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"). *Id.* ¶ 7. The plaintiffs allege that the defendants submitted a forged letter from Bank of America stating that the bank would issue a letter of credit to the defendants to

---

[2] The court's dismissal of the plaintiffs' RESPA claim as to defendant National Title is without prejudice because discovery may reveal a factual basis for claims of vicarious liability. Pls.' Opp'n to Mot. to Dismiss at 12.

secure a warranty against structural defects required under the D.C. Condominium Act.[3]  *Id.* ¶¶ 7, 10-11.  The DCRA approved the defendants' application in January, 2005.  *Id.* ¶ 15.  Thereafter, the defendants marketed and sold 12 of the 15 individual units in the Chelsea to the plaintiffs.  *Id.* ¶¶ 16, 23.

The plaintiffs allege that the defendants had an obligation to fix certain defects and failed to do so.  *Id.* ¶¶ 30-32.  Also, the plaintiffs allege that the defendants provided potential purchasers with a misleading and untruthful public offering statement[4] while marketing the individual units.  *Id.* ¶ 16.  This document stated, among other things, that the Chelsea was in compliance with all applicable zoning ordinances, housing, and building codes.  *Id.* ¶ 18.  In addition, the Unit Owners allege that Callihan, Casey, and the Condominium Group required or influenced them to use the settlement services of defendant National Title, which had an affiliate relationship with the defendants.  *Id.* ¶¶ 3, 34.  Specifically, the plaintiffs claim that the defendants did not disclose that they stood to benefit financially from the Unit Owner's use of National Title's settlement services.  *Id.* ¶ 34.

---

[3] Under the Condominium Act, "[a] declarant shall warrant against structural defects in each of the units for 2 years from the date each unit is first conveyed to a bona fide purchaser, and all the common elements for 2 years."  D.C. Code § 42-1903.16(b).  The Condominium Act further states, "[p]rior to the declarant's first conveyance of a residential unit to a purchaser, the declarant shall post a bond or letter of credit with the Mayor in the amount of 10% of the estimated construction or conversion costs, or shall provide any other form of security the Mayor shall approve to satisfy the requirements of this section."  *Id.* § 42-1903(e)(1).

[4] Under the Condominium Act, "[a] public offering statement shall disclose fully and accurately the characteristics of the condominium and the units therein offered and shall make known to prospective purchasers all unusual and material circumstances or features affecting the condominium."  D.C. Code § 42-1904.04(a).

B.    **Procedural History**

On February 3, 2006, the plaintiffs filed suit in this court alleging various state and federal claims in relation to the events stated above.[5] Compl. ¶¶ 39-82. On March 15, 2006, the defendants filed a motion to dismiss the state law claims for lack of supplemental jurisdiction. Defs.' Mot. to Dismiss ("Defs.' Mot.") at 1. In addition, the defendants moved to dismiss the count alleging a violation of RESPA, 12 U.S.C. § 2608 with respect to defendant National Title, and the counts alleging strict liability and violation of the D.C. Consumer Protection Procedures Act for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id*. at 6-9. Finally, the defendants moved to dismiss the count alleging fraud for failure to plead fraud with sufficient particularity. *Id.* at 8. In response, the plaintiffs filed an opposition on March 27, 2006. Pls.' Opp'n to Mot. to Dismiss ("Pls.' Opp'n"). The court now addresses the defendants' motion to dismiss.

III.    **ANALYSIS**

A.    **The Court Grants in Part and Denies in Part the Defendants' Motion to Dismiss Pursuant to 12(b)(1) for Lack of Subject-Matter Jurisdiction**

The defendants move to dismiss arguing that the court lacks supplemental jurisdiction over the plaintiffs' state law claims. Defs.' Mot. at 2. Specifically, they argue that the underlying facts of these claims do not form part of the same case or controversy as the federal

---

[5] The plaintiffs' state law claims are: (I) breach of statutory warranty; (II) breach of implied warranties; (III) strict liability; (IV) negligence; (VII) fraud; (VIII) violation of the D.C. Consumer Protection Procedures Act ("DCPPA"). *Id.* ¶¶ 39-53, 68-82. Additionally, the Unit Owners assert two federal claims against the defendants: (V) violation of RESPA, 12 U.S.C. § 2607; (VI) violation of RESPA, 12 U.S.C. § 2608. *Id.* ¶¶ 54-67.

claims. *Id*. at 2-4. In response, the plaintiffs argue that all of the claims arise out of a course of conduct by the defendants that would ordinarily be brought in a single judicial proceeding. Pls.' Opp'n at 7. Furthermore, the plaintiffs argue that the basis for their fraud claim and alleged violations of the DCPPA involve the same facts as the RESPA claims. *Id.* at 7.

### 1. Legal Standard for Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a

Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2.   Legal Standard for Supplemental Jurisdiction

"When a federal court has an independent basis for exercising federal jurisdiction, it may, in certain circumstances, also exercise supplemental jurisdiction over related claims under state law." *Women Prisoners of the Dist. of Columbia Dep't of Corr. v. Dist. of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996). To determine when the assertion of supplemental jurisdiction is appropriate, the district court should apply a two-part test. *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). The court first must determine whether the state and federal claims derive from a common nucleus of operative fact. *Id.* If so, "the court has the power, under Article III of the Constitution, to hear the state claim." *Id.* The court then must decide whether to exercise its discretion to assert jurisdiction over the state claim. *Id.* (noting the Supreme Court's observation that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right"). In deciding whether to assert supplemental jurisdiction over a state claim, the court should consider whether judicial economy, convenience, and fairness to litigants weigh in favor of doing so. *Id.* A court may decline to exercise supplemental jurisdiction, however, if the state claim raises a novel or complex issue of state law, substantially predominates over the

federal claims, or remains after the court has dismissed the federal claims. *Id.* at 921 (citing 28 U.S.C. § 1367(c)).

### 3. Several of the Plaintiffs' State Law Claims Lack a Common Nucleus of Operative Facts

In applying the two-part test for supplemental jurisdiction, the court first considers whether the plaintiffs' state claims share a common nucleus of operative facts with the federal claims. *Women Prisoners*, 93 F.3d at 920. The court concludes that elements of the plaintiffs' fraud and DCPPA claims derive from a common nucleus of operative facts while several of the state claims do not.

State and federal claims share a common nucleus of operative facts if the claims are such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding. *United Mine Workers of Am.*, 383 U.S. at 725. A common nucleus of operative facts exists when there is a link or overlap between the facts of the state and federal claims. *Women Prisoners*, 93 F.3d at 921 (concluding that there was a common nucleus of operative facts because both the state and federal claims related to the District of Columbia's alleged failure to provide for the needs of female prisoners); *LaShawn v. Barry,* 87 F.3d 1389, 1391 (D.C. Cir. 1996) (ruling that there was a common nucleus of operative facts when both the state and federal claims related to the District's allegedly deficient foster care system); *Prakash v. Am. Univ.*, 727 F.2d 1174 (D.C. Cir. 1984) (holding that there was a common nucleus of operative facts because both the state and federal claims related to an employment contract dispute between the plaintiff and defendant); *Jin v. Ministry of State Sec.*, 254 F. Supp. 2d 61, 66 (D.D.C. 2003) (holding that state law and federal claims were factually "linked" because they revolved around "an alleged overarching

campaign" on the part of defendants to "abridge and nullify the plaintiff's rights and liberties"). Conversely, state law claims do not derive from a common nucleus of operative facts if there is almost no factual or legal overlap between the state and federal claims. *See Singh v. George Wash. Univ.*, 368 F. Supp. 2d 58, 72 (D.D.C. 2005) (holding that facts needed to prove a discrimination claim, which would include evidence of a disability, had no overlap with facts underlying a counterclaim for defamation for statements the plaintiff made in relation to the alleged discrimination).

In this case, the underlying facts of several of the plaintiffs' state and federal claims are not so related that the plaintiffs would ordinarily be expected to try them all in one judicial proceeding. Specifically, the plaintiffs' RESPA claims relate to the defendants' failure to disclose a conflict of interest to the purchasers ("failure to disclose"). Compl. ¶ 59 (alleging that the defendants stood to financially benefit from the Unit Owners employing the settlement services of National Title). In contrast, the plaintiffs' claims of breach of statutory and implied warranties, strict liability and negligence are all based on the defendants' alleged misrepresentations, in the words of the plaintiffs, "in the marketing and sale of condominium units in a building that [the] defendants failed to properly design and construct" ("marketing misrepresentation"). Pls.' Opp'n at 1. Unlike *LaShawn*, these state law claims and federal claims do not relate to a common nucleus of operative fact. *LaShawn*, 875 F.3d at 1391.

Much like the tenuous factual relationship between the discrimination and defamation claims in *Singh*, there is little to no factual connection between the claims arising from the alleged failure to disclose and those relating to alleged marketing misrepresentation. In *Singh*, although the discrimination and defamation claims concerned generally whether the defendant

had discriminated against the plaintiff, the facts needed to prove the discrimination claim would provide little insight into the facts needed to prove the defamation claim. *See Singh*, 368 F. Supp. 2d at 72. Similarly, although the plaintiffs' failure to disclose and marketing misrepresentation claims relate generally to the purchase of condos, whether the defendants disclosed their relationship with National Title to the Unit Owners would provide little insight into whether the defendants made misrepresentations about the presence of defects in the construction of the Chelsea to the plaintiffs.

The facts surrounding the federal claims deal solely with the defendants' alleged influence over the Unit Owners to use the settlement services of National Title without disclosing their conflict of interest. Compl. ¶¶ 54-67. The facts of most of the plaintiffs' state claims, by contrast, deal solely with whether the defendants made misrepresentations about the construction of the Chelsea to the plaintiffs while marketing and selling the condos. *Id.* ¶¶ 39-53. As to the state claims, there is no factual overlap with the plaintiffs' federal claims. Accordingly, they do not derive from a common nucleus of operative facts, and the court does not have supplemental jurisdiction over the plaintiffs' state claims for breach of statutory warranty, breach of implied warranties, strict liability, and negligence claims. *Women Prisoners*, 93 F.3d at 920.

The plaintiffs' state claims of fraud and DCPPA violations, by contrast, involve both the defendants' alleged failure to disclose and alleged marketing misrepresentation.[6] Compl. ¶¶ 70, 78. The plaintiffs argue that the court has the discretion to exercise supplemental jurisdiction over all of their state claims because "certain of [the] plaintiffs' claims arise, at least in part, out of *precisely* the same facts that form the basis for the RESPA claims." Pls.' Opp'n at 7 (emphasis in original). The fact that the plaintiffs have stated two separate sets of facts under the heading of one claim, however, does not link the facts involving the defendants' alleged failure to disclose with the facts relating to the defendants' alleged marketing misrepresentation. The court's decision whether to exercise supplemental jurisdiction turns on whether there exists a common nucleus of operative facts, not the manner in which the plaintiffs choose to organize their complaint. *United Mine Workers of Am.*, 383 U.S. at 725 (noting that a common nucleus of operative facts exists if the state and federal claims are part of the same case). In short, the court does not have supplemental jurisdiction over the plaintiffs' state law claims that deal with facts wholly separate from the facts that give rise to their federal claims. *Women Prisoners*, 93 F.3d at 920.

---

[6] Careful inspection of the plaintiffs' complaint reveals that their fraud claim and their DCPPA claim actually each contain two distinct prongs. Compl. ¶¶ 68-82. Under their fraud claim, the plaintiffs allege that they were both fraudulently induced to purchase units of the Chelsea and fraudulently induced to use defendant National Title to handle their settlements and provide title insurance. *Id.* ¶ 70. Additionally, under their DCPPA claim, the plaintiffs allege that the defendants made misrepresentations in "the sale of residential real estate *and* the sale of settlement services" in violation of the DCPPA. *Id.* ¶ 78 (emphasis added).

### 4. Judicial Economy, Convenience, and Fairness Support the Court's Exercise of Supplemental Jurisdiction over the Plaintiffs' DCPPA and Fraud Claims Relating to the Defendants' Failure to Disclose

Having ruled that the plaintiffs' fraud and DCPPA claims relate to the defendants' alleged failure to disclose, the court must now consider whether it is in the interest of judicial economy, convenience, and fairness for the court to assert supplemental jurisdiction over those claims. *Women Prisoners*, 93 F.3d at 921. The court concludes that the interests of judicial economy, convenience, and fairness weigh in favor of exercising supplemental jurisdiction. *Id.* at 920.

Under 28 U.S.C. 1367(c), the court may choose to decline to exercise supplemental jurisdiction if the state claims raise a novel or complex issue of state law, substantially predominate over the federal claims, or remain after the court has dismissed the federal claims. *Id.* at 921. The defendants argue that several of these elements apply to this case.

First, the defendants argue that the plaintiffs' DCPPA claim raises a novel issue of state law because it seeks to overturn *Owens v. Curtis*, 432 A.2d 737 (D.C. 1981). Defs.' Mot. at 5. This is not correct. The 1990 amendment to the DCPPA overruled *Owen*'s holding that the DCPPA did not include real estate transactions. *DeBerry v. First Gov't Mortg. & Investors Corp.*, 743 A.2d 699, 702 n.8 (D.C. 1999) (noting that the amendment was in response to the Owen ruling); *Schiff v. Am. Ass'n of Retired Pers.*, 697 A.2d 1193, 1197 n.10 (D.C. 1997) (noting the amendment was adopted to expressly include coverage of real estate transactions). Therefore, the court's exercise of jurisdiction over the plaintiffs' DCPPA claim would not involve a complex or novel issue of state law with regard to *Owens*.

Second, the defendants argue that the state law claims substantially predominate over the federal claims because "quantitatively, there is an overwhelming dominance of [s]tate [l]aw

[c]ounts" and "the predominance is even greater when it comes to money." Defs.' Mot. at 5-6. Contrary to the defendants' argument, however, this part of the test is not satisfied by a mechanistic calculation of the number of claims and the amount of damages in a complaint. *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 601 (D.C. Cir 1994) (noting that the determination of whether a state law claim substantially predominates over a federal claim "is not one that admits to a mechanistic application"). Instead, the court must examine "the nature of the claims as set forth in the pleading and [determine] whether the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." *Diven*, 38 F.3d at 602 (quoting *Moore v. DeBiase*, 766 F. Supp. 1311, 1319 (D.N.J. 1991)). State law claims would be more salient if, for example, the federal claims were so attenuated as to be hypothetical. *Id.* (citing *Hudson County News Co. v. Metro Assoc. Inc.*, 141 F.R.D. 386, 392-93 (D. Mass 1992)).

In this case, the elements of the DCPPA and the plaintiffs' remaining fraud claims are factually the same as the plaintiffs' federal RESPA claims. Furthermore, there is no indication that the RESPA claims are more attenuated than the state claims because they involve the same matters. Therefore, the plaintiffs' DCPPA and fraud claims do not substantially predominate over the plaintiffs' federal claims.

Finally, the defendants argue that the court should not exercise supplemental jurisdiction over the plaintiffs' state law claims because of the exceptional circumstance that "[t]he determination of [the state law claims] is the particular domain of the courts of the District of Columbia." Defs.' Mot. at 6. This assertion lacks logical cohesion. It is not an exceptional circumstance for state courts to consider state law claims. If the court were to adopt the

defendants' argument, there would be an exceptional circumstance in every supplemental jurisdiction case. Therefore, judicial economy, convenience, and fairness weigh in favor of the court exercising supplemental jurisdiction over the prong of the plaintiffs' DCPPA and fraud claims that relates to the defendants' alleged failure to disclose.

Because the court does not have supplemental jurisdiction over most of the plaintiffs' state law claims, and will not exercise jurisdiction over elements of the fraud and DCPPA claims that share the fact pattern of the federal RESPA claims, the court grants in part and denies in part the defendants' motion to dismiss under Rule 12(b)(1). The court now turns to the defendants' motion to dismiss the plaintiffs' DCPPA claim for failure to state a claim for which relief can be granted and the defendants' motion to dismiss the plaintiffs' fraud claim for failure to plead with particularity.

    **B.   The Court Denies the Defendants' Motion to Dismiss Pursuant to 12(b)(6) for Failure to State a Claim for which Relief can be Granted**

The defendants argue that the DCPPA does not apply to real estate transactions and, therefore, the plaintiff's DCPPA claim does not state a claim for which relief can be granted. Defs.' Mot. at 9. Because the DCPPA applies to real estate transactions, the court denies the defendants' motion to dismiss the plaintiffs' DCPPA claim as it relates to the defendants' alleged failure to disclose.

           **1.   Legal Standard for Rule 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which

it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. Dist. of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

### 2. The Defendants Have Not Shown Beyond Doubt that the Plaintiffs can Prove No Set of Facts that would Entitle Them to Relief Under Their DCPPA Claim

The defendants argue that the plaintiffs have failed to state a claim for which relief can be granted with regard to their DCPPA claim because this act does not apply to real estate transactions. Defs.' Mot. at 9 (relying on *Owens*). Nonetheless, as discussed above, *Owens* is no longer good law. Under the current law in the District of Columbia, a plaintiff may file suit under the DCPPA for unlawful trade practices involving "real estate transactions." D.C. Code § 28-3901(a)(6) to (7), (b)(1); *DeBerry*, 743 A.2d at 702 n.8; *Schiff*, 697 A.2d at 1197 n.10. Because the defendants have not shown beyond doubt that the plaintiffs can prove no set of facts in support of their DCPPA claim that would entitle them to relief, the court denies the defendants' motion to dismiss the DCPPA claim as it relates to the defendants' failure to disclose. *Warren,* 353 F. 3d at 37. The court turns now to the defendants' motion to dismiss the plaintiffs' fraud claim for failure to plead with sufficient particularity.

### C. The Court Denies the Defendants' Motion to Dismiss Pursuant to Rule 9(b) for Failure to Plead with Particularity

The defendants argue that the plaintiffs have not plead their fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b). Defs.' Mot. at 8. Specifically, the defendants assert that the plaintiffs did not allege particular fraudulent acts on the part of the defendants in their complaint. *Id.* Because the court concludes, upon examination of the plaintiffs' complaint, that the defendants' assertion is incorrect, the court denies the defendants' motion to dismiss the plaintiff's fraud claim as it relates to the defendants' alleged failure to disclose.

### 1. Legal Standard for a Rule 9(b) Motion to Dismiss

Rule 9(b) requires that a pleader state with particularity the circumstances constituting fraud or mistake. FED. R. CIV. P. 9(b). Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated, and protects him against a strike suit brought solely for its settlement value. *Shields v. Wash. Bancorp.*, 1992 WL 88004, at *4 (D.D.C. Apr. 7, 1992) (Lamberth, J.); *see also Kowal*, 16 F.3d at 1279 n.3 (observing that Rule 9(b) aims to prevent a claim filed as a "pretext for the discovery of unknown wrongs" (citation omitted)); *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777-78 (7th Cir. 1994) (recognizing that Rule 9(b) is largely designed to give each opponent notice of his purported role in the alleged fraud); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (same).

Because the rule is chiefly concerned with the elements of fraud, the circumstances that the claimant must plead with particularity include matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002); *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981). In other words, Rule 9(b) requires that the pleader provide the "who, what, when, where, and how" with respect to the circumstances of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. den'd*, 498 U.S. 941 (1990) (requiring the pleader to provide the equivalent of a "first paragraph of any newspaper story"). Following the same line of reasoning, a pleading subject to Rule 9(b) scrutiny may not rest on information and belief, but must include an allegation that the necessary information lies within the

opponent's control, accompanied by a statement of the facts on which the pleader bases his claim. *Kowal*, 16 F.3d at 1279 n.3.

That said, Rule 9(b)'s particularity requirement does not abrogate Rule 8's general requirements that a pleading contain a short and plain statement of the claim, and that each averment be simple, concise, and direct. *Id*. at 1278 (citing *Cannon*, 642 F.2d at 1385); FED. R. CIV. P. 8. Rule 9(b) simply requires the pleader to provide a higher degree of notice by adequately alleging all of the requisite elements for the cause of action invoked. *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997); *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002). Additionally, while the court must take as true all allegations of material fact and construe them in the light most favorable to the pleader in resolving a Rule 9(b) challenge, the pleader nevertheless must satisfy his burden by stating with particularity the supporting factual allegations for his claim. *Kowal*, 16 F.3d at 1278 (citing *Wool v. Tandem*, 818 F.2d 1433, 1439 (9th Cir. 1987)); *Shields*, 1992 WL 88004, at *7; *see also One-O-One Enters., Inc. v. Caruso*, 668 F. Supp. 693, 697-99 (D.D.C. 1987), *aff'd*, 848 F.2d 1283 (D.C. Cir. 1988) (explaining that the pleader must allege with particularity the alleged fraud to survive a Rule 9(b) motion).

Where a pleading does not satisfy the heightened requirements of Rule 9(b), the court should freely grant leave to amend. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (recognizing that courts almost always grant leave to amend to cure deficiencies in pleading fraud). Accordingly, the court should reserve dismissal with prejudice for "extreme situations where the pleader has had the opportunity to cure any deficiencies but either has not or cannot do so." *Shields*, 1992 WL 88004, at *5.

### 2.     The Plaintiffs have Plead Their Fraud Claim with Particularity

The defendants argue that the plaintiffs' complaint lacks "specific references to acts of fraud or as to what particular alleged fraudulent acts were relied upon." Defs.' Mot. at 8. This is incorrect. The plaintiffs allege that "[p]rior to the closings on their units, the Units Owners [sic] [p]laintiffs were informed by [the] defendants and/or their agents that all closing [sic] on units at the Chelsea would be handled by National Title Services." *Id.* ¶ 34. The complaint further states that the defendants "did not disclose to the Unit Owner [p]laintiffs that National Title Services had an affiliated business arrangement with defendants Callihan, Casey, and Condominium Group, and those defendants stood to benefit financially from unit owners' use of the services of National Title." *Id.* ¶ 34. The plaintiffs argue that, because of "material misrepresentations and omissions," the plaintiffs "agreed to use defendant National Title Services to handle settlements and provide title insurance." *Id.* ¶¶ 69-70. Furthermore, the plaintiffs claim to have suffered damages as a result of these "misrepresentations and omissions." *Id.* ¶ 71. These allegations specify a "who, what, when, where, and how" with respect to the plaintiffs' fraud claim relating to the defendants' failure to disclose their relationship with National Title. *DiLeo*, 901 F.2d at 627. Therefore, the allegations are sufficient to give the defendants notice of their purported role in the alleged fraud. *Vicom*, 20 F.3d at 777-78. Because the plaintiffs sufficiently plead their fraud claim as it relates to the defendant's alleged failure to disclose their relationship with National Title, the court denies the defendants' motion to dismiss this claim under Rule 9(b). *Sheilds*, 1992 WL 88004, at *4.

## IV.     CONCLUSION

For the foregoing reasons, (1) the court grants the defendants' motion to dismiss the plaintiffs' breach of statutory warranty, breach of implied warranties, strict liability, negligence, fraud, and DCPPA claims as they relate to the defendants' alleged marketing misrepresentation; (2) the court grants the plaintiffs' request to dismiss without prejudice count six (the RESPA claim) with regard to defendant National Title; (3) the court denies the defendants' motion to dismiss the plaintiffs' fraud and DCPPA claims as they relate to the defendants' alleged failure to disclose.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of January 2007.

RICARDO M. URBINA
United States District Judge